UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY PERRY,

      Plaintiff,

v.                    Case No: 2:18-cv-606-FtM-29NPM

WALMART INC., WALMART
ASSOCIATES, INC., and WAL-
MART STORES EAST, L.P.,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment (Doc. #43) filed on January 6, 2020. Plaintiff filed a Memorandum in Opposition (Doc. #55) on February 7, 2020. With the Court's permission, defendants filed a Reply (Doc. #66) and Objections to Certain Summary Judgment Evidence Offered by Plaintiff (Doc. #67) on February 23, 2020, and plaintiff filed a Sur-Reply (Doc. #69) on March 3, 2020. For the reasons that follow, the motion is granted in part and denied in part.

**I.**

Plaintiff Kimberly Perry has filed a seven-count Complaint against defendants Walmart, Inc., Walmart Associates, Inc., and Walmart Stores East, L.P. (collectively "Walmart"). (Doc. #1.) Walmart now seeks summary judgment for each claim in the Complaint.

**A. Factual Background**[1]

Plaintiff is a forty-three-year-old woman who began working for Walmart in February 2005 at a distribution facility in Arcadia, Florida. (Doc. #56-1, ¶¶ 2-3.) The facility, which serves as a distribution point for goods received and shipped to various Walmart retail stores, contains large cargo bays where tractor trailer trucks are loaded and unloaded. (Id. ¶ 4.) Plaintiff began working at the facility as a Dry Receiving Hauler before subsequent promotions to Perishable Receiving Dock Hauler and Perishable Receiving Dock Receiver. (Id. ¶ 6.) In August 2009, plaintiff transferred to the Asset Protection Division ("AP"), where she worked until her employment ended in March 2018. (Id. ¶¶ 5, 7.) As part of her duties as an AP associate, plaintiff was required to interact with truck drivers delivering or picking up goods. (Id. ¶ 18.) These interactions typically occurred when fewer personnel were present because plaintiff worked the overnight shift at the facility. (Id.)

In December 2009, plaintiff reported two incidents of harassment, both involving third-party truck drivers. (Doc. #46-

---

[1] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

1, p. 17.) In the first incident, the driver attempted to take a picture of plaintiff's backside while commenting on her body. (Id.; Doc. #44-1, p. 87.) Plaintiff had previously told her superiors that drivers were attempting to take her picture. (Doc. #44-1, p. 90.) In the second incident, a driver used an air pump to blow air into plaintiff's face and eye. (Doc. #46-1, p. 17.) The driver had previously made crude remarks to plaintiff, about which she had complained. (Doc. #44-1, p. 83.) Plaintiff filed a written report with her supervisors regarding the two incidents (Doc. #46-1, p. 17), and also explained what occurred in more detail at a subsequent meeting. (Doc. #44-1, pp. 88-89.) Walmart investigated plaintiff's complaint and both drivers provided written statements. (Doc. #47-1, ¶ 4.) The first driver denied trying to take plaintiff's picture, instead stating he was turning on the flashlight function on his phone to provide plaintiff with more light while she inspected his truck. (Id.) The second driver denied blowing air towards plaintiff's face or into her eye, stating he was using the hose to blow dust and debris from his truck. (Id.) Walmart ultimately determined plaintiff's claims could not be substantiated and no action was taken. (Id.)

In 2014, plaintiff was injured at work. (Doc. #56-1, ¶ 16.) As part of her recovery, plaintiff was granted intermittent leave pursuant to the Family and Medical Leave Act. (Id.) Over the

next few years, plaintiff occasionally took leave as required for her treatment and recovery. (Id.)

In August 2016, a truck driver reported to an AP associate that the word "Koko" was written on the back of several Walmart trailers. (Doc. #46-1, p. 18.) The driver informed the associate that the term meant "black vagina," and the associate passed the information on to plaintiff. (Id.) The AP associates began keeping track of which trailers had the term written on them and determined the truck loaders were responsible. (Id. pp. 19-20.) Plaintiff reported the graffiti to her superiors and requested it cease. (Id. p. 20.) Walmart investigated the report and subsequently identified the employee responsible. (Doc. #47-1, ¶ 6.) The employee stated "Koko" was his son's nickname and he wrote it on the trucks so his son would know which he had loaded. (Id.; Doc. #48-1, p. 67.) When asked for proof, the employee showed his Facebook page, which contained the son's nickname. (Doc. #48-1, p. 68.) Walmart disciplined the employee for writing on the trailers, but found no evidence the term was being used in a sexually derogatory manner or that it was directed towards plaintiff. (Doc. #47-1, ¶ 6.) Despite the discipline, plaintiff saw the term written on trucks continuously, albeit less frequently, during her time in AP. (Doc. #44-1, pp. 126, 128.) When plaintiff followed up with her supervisor, Dana Harrington,

in 2017, Harrington called plaintiff's complaints "annoying" and labeled her a "troublemaker." (Doc. #56-1, ¶ 19.)

In December 2016, a driver grabbed plaintiff by the arm and told her he could kidnap her, throw her in the back of the trailer, and rape her. (Id. ¶ 20; Doc. #44-1, p. 144.) In January 2017, a driver asked to see plaintiff's hand and then grabbed it suddenly. (Doc. #46-1, p. 32.) Plaintiff reported both incidents to her superiors and requested, apparently not for the first time, a plexiglass barrier be installed between the truck drivers and AP associates.[2] (Id. p. 33; Doc. #44-1, p. 150.) With regards to the second incident, Harrington asked plaintiff if she had been flirting with the driver. (Doc. #44-1, p. 165.) Walmart reviewed surveillance video to determine the identity of the driver, but the incident was not located on video. (Doc. #47-1, ¶ 7.)

In January 2017, plaintiff again expressed safety concerns at an AP meeting at a local seafood restaurant. (Doc. #56-1, ¶ 22.) Harrington mocked plaintiff's concerns, stating she was going to be put in front of the restaurant's lobster tank and that could be her safety barrier. (Id.; Doc. #44-1, p. 188.) Soon thereafter, Harrington told plaintiff the upcoming weekend in which she was

---

[2] Plaintiff was told by her superiors that they were looking into the barrier but it was not a "top priority." (Doc. #46-1, p. 43.) A plexiglass window was eventually installed in 2018 prior to plaintiff leaving Walmart. (Doc. #47-1, ¶ 10; Doc. #56-1, ¶ 20.)

not working was "going to be the all men weekend because Kim won't be here, which is how it should be all the time, just men."[3] (Doc. #56-1, ¶ 23.)

In February 2017, plaintiff submitted a sexual harassment complaint via Walmart's Global Ethics hotline.[4] (Doc. #46-1, p. 34.) In the complaint, plaintiff stated she had experienced sexual harassment from various truck drivers since approximately 2008, describing several of the incidents above. (Id. p. 36.) Plaintiff further reported that a manager had not allowed her to take her required breaks and, as a result, she became sick and had to leave work and go to the emergency room. (Id.) Plaintiff stated her mother called to inform Harrington that plaintiff would be out due to medical issues and Harrington was verbally abusive, causing plaintiff to be afraid of retaliation when she returned to work. (Id.) Walmart investigated the complaint and was unable to verify the allegations. (Id. p. 39.) The complaint was closed as "unsubstantiated." (Id.)

---

[3] Harrington had previously told plaintiff she was just there to "look pretty," and that women had no business working in the distribution center because warehouse work was "a man's job not a woman's job." (Doc. #56-1, ¶¶ 17, 22; Doc. #44-1, pp. 203-04, 276-77.)

[4] The hotline allows employees to submit ethics concerns, questions, or allegations, which Walmart then investigates. (Doc. #45-1, p. 37.)

In March 2017, plaintiff submitted a sexual harassment and discrimination complaint to the Equal Employment Opportunity Commission. (Doc. #56-3, p. 13.) In the complaint, plaintiff stated (1) she had been a victim of sexual harassment by truck drivers and others continuously since 2009, (2) she had repeatedly notified her superiors of the harassment, with no action being taken to address the situation, and (3) she had been belittled and retaliated against for raising her concerns. (Id.) Plaintiff also described the incidents listed above. (Id. pp. 14-15.)

In November 2017, plaintiff submitted a written complaint through Global Ethics about sexual harassment from an AP coworker.[5] (Doc. #46-1, p. 47.) In the complaint, plaintiff stated the coworker was making sexually explicit and offensive remarks to her, including the following:

a. Referring to sexual acts and suggesting plaintiff did not like it "sticky and icky";

b. Telling plaintiff the truck drivers were going to ask her to put her "titties" on the window;

c. Telling plaintiff she had a "juicy big old butt";

d. Stating plaintiff "wore [him] out last night."

---

[5] In December 2017, plaintiff amended her EEOC complaint to add these new incidents of sexual harassment. (Doc. #56-4, pp. 16-18.)

(Id. pp. 47-49; Doc. #56-1, ¶ 25.) Walmart investigated plaintiff's allegations, interviewing the AP coworker as well as two other employees. (Doc. #60-1, p. 35.) The AP coworker denied making any comments or jokes with plaintiff and suggested the allegations against him were retaliation for his reporting of plaintiff for taking long breaks. (Id.) However, the two other employees corroborated plaintiff's claims, and Walmart determined the sexual harassment allegation was substantiated. (Id.) The AP coworker's employment was terminated in December 2017 for violating Walmart's Discrimination and Harassment Prevention Policy. (Doc. #47-1, ¶ 12.)

In December 2017, Harrington issued a disciplinary notation to plaintiff for failing to complete a computer-based learning ("CBL") on time.[6] (Id. ¶ 13.) Plaintiff responded by submitting a written complaint to Global Ethics, stating Harrington and another manager were retaliating against her for reporting the sexual harassment of the AP coworker. (Doc. #46-1, p. 50.) Plaintiff stated Harrington and the AP coworker were friends, and since reporting the sexual harassment, plaintiff was being written up "for every little thing." (Id.) Plaintiff stated she had told

---

[6] The disciplinary notation is referred to as an "Occurrence." Walmart policies define how many Occurrences will result in a "Step," and how many Steps will result in termination. (Doc. #47-1, ¶ 13.)

both managers she was having problems with her work computer and accessing her emails, which is why she had not completed the CBL. (Id. pp. 50-51.) She also stated that neither she nor any other employee had ever been disciplined for failing to complete a CBL on time.[7] (Id. p. 50.) Walmart investigated the retaliation allegation and determined it was unsubstantiated. (Doc. #60-1, p. 19.) The investigation found that two employees (including plaintiff) did not complete the CBL on time despite multiple email reminders, and that both were issued the same disciplinary notation. (Id.)

In January 2018, plaintiff reported to Walmart that a truck driver had grabbed her arm while her back was slightly turned to him. (Doc. #46-1, p. 55.) Plaintiff also supplied the driver's identification information. (Id. pp. 56-62.) While it appears from the record that Walmart investigated the accusation, it is unclear what the result was. (Doc. #56-1, ¶ 32; Doc. #60-1, pp. 25-27.)

In February 2018, two Walmart employees reported hearing plaintiff use profanity in the lunch cafeteria. (Doc. #60-1, pp. 39-41, 45.) Both employees stated the profanity was in reference

---

[7] Plaintiff also stated that Harrington was constantly "putting [her] down," telling other employees she was lazy and did not come to work, and making reference to plaintiff's intermittent leave. (Doc. #46-1, pp. 51-52.)

to a third-party cafeteria vendor after a dispute with plaintiff about a lunch order. (Id.) Walmart investigated the allegation, which plaintiff denied. (Id. pp. 49, 53-57.) Based on the other employees' statements, Walmart determined plaintiff was not responding honestly during the investigation and had violated Walmart's Respect for the Individual policy.[8] (Doc. #56-1, ¶ 34.) As a result, plaintiff was suspended without pay and removed from the AP department. (Doc. #56-1, ¶ 34.)

Soon after she was suspended, plaintiff accepted a job offer with a different employer. (Id. ¶ 35.) Plaintiff submitted a resignation letter to Walmart, stating she considered herself constructively discharged from employment based on Walmart's discriminatory conduct.[9] (Doc. #46-1, p. 65.)

---

[8] Walmart maintains several policies related to employment, including a Global Statement of Ethics that outlines Walmart's Four Basic Beliefs: (1) Respect for the Individual; (2) Service to Our Customers; (3) Striving for Excellence; and (4) Act with Integrity. (Doc. #45-1, pp. 30, 34.) The Global Statement of Ethics applies to all associates at all levels within Walmart, and requires every Walmart associate to, *inter alia*, (1) "treat[] one another with fairness and courtesy in all [workplace] interactions," and (2) "[c]ooperate with Walmart's investigations and report all information truthfully." (Doc. #45-1, pp. 35, 41.)

[9] Around the same time, plaintiff amended her EEOC complaint for a second time to add the January 2018 grabbing incident and the March 2018 suspension. (Doc. #56-5, pp. 19-20.)

**B. Procedural Background**

In September 2018, plaintiff initiated this action by filing a Complaint asserting the following seven claims: (1) sexual discrimination under Title VII; (2) sexual harassment/hostile work environment; (3) violation of the Florida Civil Rights Act ("FCRA"); (4) retaliation under Title VII; (5) retaliation under the FCRA; (6) violation of the Family Medical Leave Act ("FMLA"); and (6) negligent supervision, training and retention. (Doc. #1, pp. 7-13.) In October 2018, Walmart filed its Answer and Statement of Defenses, denying any wrongdoing and raising numerous affirmative defenses. (Doc. #12.) On January 6, 2020, Walmart filed the Motion for Summary Judgment now before the Court, arguing there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law. (Doc. #43.)

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

**A. Sexual Discrimination (Counts I, III)**

Plaintiff alleges Walmart sexually discriminated against her in violation of Title VII (Count I) and the FCRA (Count III). Because the FCRA is patterned after Title VII, the Eleventh Circuit has consistently applied case law interpreting Title VII to claims

brought under the FCRA.  Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004).  Accordingly, the Court will address these claims together.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Mars v. Urban Tr. Bank, 2014 WL 2155243, *2 (M.D. Fla. May 22, 2014) (citing 42 U.S.C. § 2000e-2(a)(1)). To establish a prima facie case of discrimination under Title VII, a plaintiff must show "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).

Plaintiff's Complaint does not specifically identify what "adverse employment action" she is relying on for her sexual discrimination claims, but appears to reference (1) her suspension and removal from the AP division, and (2) her subsequent resignation/discharge.[10]  (Doc. #1, ¶¶ 35-36, 40-46, 52-60.)  In

_____

[10] The CBL disciplinary notation does not qualify as "an adverse employment action" for purposes of Title VII. See McCone v. Pitney Bowes, Inc., 582 Fed. App'x 798, 800 (11th Cir. 2014) ("Generally, an adverse employment action requires a significant

13

seeking summary judgment, Walmart argues plaintiff (1) cannot show that the decision to remove her from AP was pretext for discrimination, and (2) cannot satisfy the standard for constructive discharge. (Doc. #43, pp. 16-18.) The Court will address these arguments in turn.

**1. Suspension and Removal from the AP Division**

When a plaintiff offers circumstantial evidence to establish a Title VII violation, the Court uses the analytical framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lawyer v. Hillcrest Hospice, Inc., 300 Fed. App'x 768, 772 (11th Cir. 2008).

> This framework requires the plaintiff to establish a *prima facie* case of discrimination, and then the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action it took. The burden then shifts back to the plaintiff to demonstrate that the proffered reason was pretextual. The plaintiff can establish pretext by showing that the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that the discriminatory reasons motivated the decision than the employer's proffered reasons.

Id. (citations omitted). As noted, with regards to the decision to suspend plaintiff and remove her from the AP division, Walmart argues plaintiff cannot show that the decision was pretext for

---

change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

discrimination. (Doc. #43, p. 16.) Accordingly, the Court will assume for purposes of this argument that plaintiff has established a prima facie case of discrimination under Title VII with regard to the suspension and removal and, therefore, the burden shifts to Walmart "to offer a legitimate non-discriminatory reason for the employment action it took." _Lawver_, 300 Fed. App'x at 772.

Walmart's proffered reasons for suspending plaintiff and removing her from AP are twofold: (1) plaintiff's violation of Walmart's Respect for the Individual policy, and (2) plaintiff's dishonesty during the investigation. (_Id._) Essentially Walmart is asserting the action was taken because Walmart determined plaintiff used profanity during the cafeteria altercation and then was dishonest by denying it during Walmart's investigation. Having reviewed the arguments of the parties and the record evidence, the Court finds Walmart's asserted reasons to be legitimate and non-discriminatory.

As previously noted, Walmart maintains several policies related to employment, including a Global Statement of Ethics that outlines Walmart's Four Basic Beliefs: (1) Respect for the Individual; (2) Service to Our Customers; (3) Striving for Excellence; and (4) Act with Integrity. _See_ _supra_, n.8. The Global Statement of Ethics requires, _inter_ alia, employees (1) "treat[] one another with fairness and courtesy" in all workplace interactions, and (2) "[c]ooperate with Walmart's investigations

and report all information truthfully."[11]  The Global Statement of Ethics also states "inappropriate conduct such as obscene, profane, gross, violent, discriminatory, bullying or similarly offensive language, gestures or conduct" will not be tolerated and violates the Respect for the Individual belief.  (Doc. #45-1, p. 42.)  The Global Statement of Ethics applies to all associates at all levels within Walmart, and violations result in disciplinary action "up to and including termination."  (Id. pp. 35-36.)

The Court finds that plaintiff's alleged use of profanity during an altercation with the cafeteria vendor and subsequent alleged dishonesty about it violate these policies.  Accordingly, the Court finds Walmart has proffered legitimate, non-discriminatory reasons for suspending plaintiff and removing her from the AP division.  See Boyland v. Corr. Corp. of Am., 390 Fed. App'x 973, 975 (11th Cir. 2010) (finding employee's violation of work policy and lying during subsequent internal investigation were legitimate, non-discriminatory reasons for termination).

Having found Walmart's reasons to be legitimate and non-discriminatory, the burden shifts to plaintiff to demonstrate the reasons are pretextual.  "A legitimate, nondiscriminatory reason

---

[11]  Similarly, the AP associate job description, which plaintiff signed and acknowledged, requires employees "[s]how[] integrity and ethical behavior in all work situations."  (Doc. #45-1, p. 28.)

proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible." Boyland, 390 Fed. App'x at 975 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). If the proffered reason "is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must 'meet that reason head on and rebut it.'" Id. (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)). When an employer claims that a plaintiff was fired for violating a work rule, a plaintiff may show pretext through evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated. Id. (citing Damon v. Fleming Supermarkets, Inc., 196 F.3d 1354, 1363 (11th Cir. 1999)). Courts "will not second-guess an employer for firing an employee for lying during an important internal investigation unless the employee produces evidence that the employer lacked a good faith belief that the employee lied." Id. (citing EEOC v. Total Sys. Servs., 221 F.3d 1171, 1176 (11th Cir. 2000)).

Plaintiff first suggests summary judgment is inappropriate on the issue of pretext because of the factual questions involving motive in intentional discrimination cases. (Doc. #55, p. 19.) However, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either

side of the scale." Chapman, 229 F.3d at 1026; see, e.g., Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160 (11th Cir. 2006) (affirming grant of summary judgment on Title VII discrimination claim where plaintiff did not establish that employer's proffered reason was pretextual).

Plaintiff next argues that Walmart's stated reason is pretextual based on the following "ample evidence":

- The cafeteria incident allegedly occurred after years of plaintiff's complaints and only weeks after the investigation into one of her sexual-harassment complaints was closed;

- There is evidence in the record that profanity was used at the distribution center on a regular basis without anyone being disciplined;

- The cafeteria vendor who plaintiff had the dispute with provided a statement that made no mention of profanity;

- Of the three witnesses to the cafeteria incident Walmart has identified, one did not provide a statement and another "was someone who had an axe to grind" against plaintiff;

- Walmart's version of events could have been easily confirmed or rebutted by review of the surveillance tape from the cafeteria, but the tape was destroyed.

(Doc. #55, pp. 19-21.) Plaintiff argues that taken together, this evidence is sufficient to "raise serious question as to the

credibility of [Walmart's] stated reasons."[12]  (Id. p. 21.)

Having reviewed plaintiff's arguments as well as the evidence in the record, the Court finds she has failed to sufficiently rebut Walmart's proffered reasons. First, there are numerous deficiencies with the "evidence" plaintiff cites above. For example, plaintiff states that profanity was used in the distribution center on a regular basis without discipline.[13] Presumably plaintiff is attempting to demonstrate pretext by showing she was punished while others who committed the same act were not. See Elver v. Whidden, 2019 WL 144916, *9 (M.D. Fla. Jan. 9, 2019) (recognizing that "a plaintiff can attempt to meet his burden of showing pretext with evidence that other employees were treated differently despite engaging in similar acts as the plaintiff"). However, to use comparable evidence to demonstrate

---

[12] Plaintiff's pretext argument in her Memorandum is made in response to Walmart's argument regarding the retaliation claims. (Doc. #55, pp. 17-21.) However, given the similar nature of the claims, the Court will assume the argument applies to the Title VII and FCRA discrimination claims as well.

[13] In her Memorandum, plaintiff states her testimony on this issue "was in part confirmed" by Harrington. (Doc. #55, p. 20.) However, Harrington testified (1) that while "[i]t's possible" he's heard profanity used at the facility, it was not used on a daily or regular basis, and (2) he could not answer whether any disciplinary action had been taken as a result of profanity. (Doc. #61-1, pp. 25-26.) He also testified that Walmart does not tolerate profanity from its customers or associates, and that he is not aware of profanity at the facility ever being identified by management as a problem that needed to be addressed. (Id. p. 26.)

pretext, the other employees must be similarly situated to plaintiff "in all relevant respects." <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1280 (11th Cir. 2008) (citation omitted). Such is not the case here. Even assuming other employees were not disciplined for using profanity in the distribution center, neither was plaintiff. Rather, plaintiff was disciplined for allegedly using profanity in reference to another employee, and then subsequently lying about it. The difference is not simply semantics. <u>See id.</u> ("Misconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." (citation omitted)); <u>Burke-Fowler</u>, 447 F.3d at 1323 (noting that to determine whether employees are similarly situated, court requires "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges" (citation omitted)).[14]

_____

[14] Much of the other "evidence" plaintiff cites has similar deficiencies. For example, it is undisputed that the video in the distribution center does not record sound, and therefore could not have captured the alleged profanity. (Doc. #48-2, pp. 135-36.) Additionally, while the cafeteria vendor's statement does not reference plaintiff's use of profanity (Doc. #60-1, p. 47), the other witnesses reported hearing the profanity while plaintiff walked *away* from the vendor (<u>id.</u> pp. 41, 43, 45.) Finally, to the extent plaintiff suggests there is an inference of pretext because the cafeteria incident happened soon after one of her sexual-harassment claims, "mere coincidence of timing, without more, simply does not suffice to establish pretext." <u>Diehl v. Bank of Am.</u>, 2011 WL 13174774, *5 (M.D. Fla. Mar. 4, 2011).

Having reviewed the record and the arguments, the Court finds plaintiff has failed to demonstrate pretext. The evidence before the Court shows plaintiff was heard to use profanity while referencing the cafeteria vendor, and then denied doing so during Walmart's investigation. Plaintiff's continued denial that she used profanity and her subjective belief that she was discriminated against are insufficient to demonstrate pretext. See Langford v. Magnolia Advanced Materials, Inc. 709 Fed. App'x 639, 641 (11th Cir. 2017) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. Nor does Title VII protect against harsh treatment in the workplace or require an employer to have good cause for its decisions. An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (citations omitted)); Jackson v. Agency for Persons with Disabilities Fla., 608 Fed. App'x 740, 742 (11th Cir. 2015) ("[W]hen an employer relies on a report in making an employment decision, the accuracy of the report is irrelevant to the pretext inquiry, which is limited to determining whether the employer, relying on the report, honestly believed the employee had done wrong. Similarly, an employer's mistaken belief about an employee's performance does not establish pretext so long as the employer honestly believed her performance was unsatisfactory."

(citations omitted)); Alvarez v. Royal Atl. Developers, Inc., 610
F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers
on the employer's beliefs, not the employee's beliefs and . . .
not on reality as it exists outside of the decision maker's
head."); Bennett v. Chatham Cty. Sherriff Dep't, 315 Fed. App'x
152, 160-61 (11th Cir. 2008) ("Bennett did not offer any evidence
from which a jury could conclude that Harn's decision to suspend
her for a week was made in bad faith or was actually motivated by
a desire to retaliate. Gilberg's report, along with the attached
incident reports and witness interview summaries, provided
reasonable grounds to believe that Bennett had engaged in the
charged misconduct. Thus, Bennett's claim that she was innocent
of the misconduct does not support a finding of pretext."). As
Walmart has proffered legitimate, non-retaliatory reasons for
suspending plaintiff and removing her from the AP department, and
plaintiff has failed to show those reasons are pretextual,
plaintiff cannot use this incident as an "adverse employment
action" for purposes of establishing a Title VII or FCRA claim.

### 2. Constructive Discharge

Having determined plaintiff cannot rely upon the suspension
and AP removal to establish her discrimination claims, the Court
now turns to whether plaintiff's resignation constitutes an
adverse employment action for purposes of Title VII and the FCRA.
As noted, plaintiff alleges this resignation was actually a

constructive discharge. See Ross v. City of Perry, Ga., 396 Fed.
App'x 668, 670 (11th Cir. 2010) (recognizing that "[a]n involuntary
resignation that constitutes a constructive discharge is an
adverse employment act under Title VII"); Morgan v. Ford, 6 F.3d
750, 755 (11th Cir. 1993) ("[W]hen an employee involuntarily
resigns in order to escape intolerable and illegal employment
requirements to which he or she is subjected because of race,
color, religion, sex, or national origin, the employer has
committed a constructive discharge in violation of Title
VII." (citation omitted)). In its motion, Walmart argues
plaintiff cannot satisfy the standard for constructive discharge,
and therefore she cannot rely upon her resignation as an "adverse
employment action" under Title VII. (Doc. #43, pp. 17-18.) Prior
to addressing the merits of this argument, the Court must first
address whether plaintiff has effectively abandoned this issue.

In its Reply, Walmart notes that plaintiff does not address
the constructive discharge issue in her Memorandum. (Doc. #66, p.
5.) The Eleventh Circuit has held that a party's failure to
respond to an argument in a motion for summary judgment can
constitute an abandonment of the underlying claim. See Jones v.
Bank of Am., N.A., 564 Fed. App'x 432, 434 (11th Cir. 2014) ("[I]n
their brief in opposition to BOA's motion for summary judgment,
Plaintiffs have failed to respond to BOA's arguments that it is
entitled to summary judgment on their claims. '[A] party's failure

to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.' Also, '[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.' Consequently, Plaintiffs have abandoned their claims." (citations omitted)); Fischer v. Fed. Bureau of Prisons, 349 Fed. App'x 372, 375 n.2 (11th Cir. 2009) ("We note that Fischer has waived any claim related to the blood clotting in his leg because he did not address that issue in response to Dr. Tidwell's motion for summary judgment."); Floyd v. Home Depot U.S.A., Inc., 274 Fed. App'x 763, 764-65 (11th Cir. 2008) ("In Floyd's response brief in opposition to the motion for summary judgment, Floyd did not respond to Home Depot's argument that there was no causal connection between Floyd's Equal Employment Opportunity Commission ("EEOC") charge and his termination which occurred five months later. Instead, Floyd argued that Home Depot retaliated against him by refusing to allow him the breaks he needed to care for his medical needs. Accordingly, the district court properly found that Floyd had abandoned his ADA retaliation termination claim."); Edmondson v. Bd. of Trs. of Univ. of Ala., 258 Fed. App'x 250, 253 (11th Cir. 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary

judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

Having reviewed plaintiff's Memorandum, the Court agrees she failed to address Walmart's argument, as the only reference to constructive discharge is her suggestion that the resignation letter made "it very clear she considered her termination to be a constructive discharge."[15] (Doc. #55, pp. 10-11.) Based on the preceding case law, the Court finds plaintiff's failure results in an abandonment of the constructive discharge allegation. See Christian v. Cartersville City Sch. Bd. of Educ., 167 Fed. App'x 89, 90 n.1 (11th Cir. 2006) (approving district court's determination that plaintiff abandoned constructive discharge claim because she failed to address constructive discharge in her brief opposing summary judgment).[16] This abandonment, coupled with the Court's conclusion above regarding the suspension and removal from the AP division, means plaintiff has failed to establish a discriminatory, adverse employment action for purposes of Title

---

[15] After Wal-Mart filed its Reply, the Court issued an order permitting plaintiff to file a sur-reply. (Doc. #68.) Plaintiff did so on March 3, 2020, but again failed to address Walmart's constructive discharge argument. (Doc. #69.)

[16] To the extent the Complaint references the alleged constructive discharge in the discrimination claims, "a party may not rely on her pleadings to avoid judgment against her." Edmondson, 258 Fed. App'x at 253.

VII and the FCRA.  Accordingly, the Court finds summary judgment in Walmart's favor is appropriate on plaintiff's sexual discrimination claims in Counts I and III.

**B. Sexual Harassment/Hostile Work Environment (Count II)**

Sexual harassment is a form of sexual discrimination within the meaning of Title VII.  Fleming v. Boeing Co., 120 F.3d 242, 244 (11th Cir. 1997) (citation omitted).  Two types of sexual harassment are prohibited by Title VII: *quid pro quo* harassment and hostile work environment harassment.  Id. (citation omitted).

To establish a hostile work environment claim based upon sexual harassment under Title VII, as plaintiff alleges, she must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on the sex of the plaintiff; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.  Quering v. Bank of Fla. Corp., 2009 WL 1308610, *2 (M.D. Fla. May 11, 2009) (citations omitted).

In the motion, Walmart argues plaintiff cannot make out a sexual harassment claim because (1) she has not established severe or pervasive harassment and (2) Walmart took appropriate remedial

action in response to plaintiff's complaints. (Doc. #43, pp. 18-22.) The Court will address these arguments in turn.

### i. Severe or Pervasive Harassment

As noted, plaintiff must show that the sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. <u>Quering</u>, 2009 WL 1308610, *2. This involves both a subjective and objective component. <u>Edwards v. Ambient Healthcare of Ga., Inc.</u>, 674 Fed. App'x 926, 928 (11th Cir. 2017) (citation omitted).

> That is, the work environment must be one that a reasonable person would find hostile or abusive and that the victim subjectively perceives to be abusive. In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

<u>Id.</u> (citations omitted).

Walmart argues "[e]ven if Plaintiff can establish she experienced unwelcome sexual conduct, the incidents she cites were not severe or pervasive enough to change her employment conditions." (Doc. #43, p. 19.) To determine if this is true, it is first necessary to summarize the incidents of alleged sexual harassment plaintiff has identified during her tenure at Walmart:

- A driver attempted to take a picture of plaintiff's backside while commenting on her body. Plaintiff had previously complained that drivers were attempting to take her picture.

- A driver who had previously made crude remarks to plaintiff used an air pump to blow air into plaintiff's eye.

- The word "Koko," which allegedly meant "black vagina," was written on truck trailers and continued to be present even after Walmart identified the employee responsible.

- A driver grabbed plaintiff by the arm and told her he could kidnap and rape her.

- A driver asked to see plaintiff's hand and then grabbed it suddenly. When plaintiff reported the incident, her superior asked if she had been flirting with the driver.

- Plaintiff's supervisor told her she was there to "look pretty" and that women had no business working in the distribution center because it was "a man's job not a woman's job." The supervisor also commented that a weekend in which plaintiff was not working was "the all men weekend . . . which is how it should be all the time, just men."

- An AP coworker repeatedly made sexually explicit and offensive remarks to plaintiff before his employment was terminated.

- A truck driver grabbed plaintiff's arm while her back was turned to him.[17]

In addition to these incidents, plaintiff has identified the following three occasions in which other female employees were allegedly subjected to sexual harassment by male employees: (1) a male employee allegedly exposed his penis to a female maintenance associate; (2) a male employee allegedly pulled down a female associate's sweatpants while she was working in the warehouse; and (3) a male employee allegedly made unwanted sexual comments to a female associate while continuously asking her on a date. (Doc. #56-1, ¶¶ 12-15.) While Walmart objects to this evidence on hearsay grounds (Doc. #67, pp. 4-7), a plaintiff "may support a claim of hostile work environment by the use of harassing conduct she learned of through hearsay, so long as she was aware of the harassing incidents at the relevant time at which she alleges she experienced the hostile environment." Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1326 (N.D. Ga. 2001); see also Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995)

---

[17] To the extent Walmart argues some of these incidents are inadmissible due to hearsay (Doc. #66, pp. 1-2; Doc. #67, pp. 4-7), "evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement." Anderson v. U.S., 417 U.S. 211, 220 n.8 (1974).

(stating a plaintiff may have a viable hostile environment claim even if the remarks at issue were not directed at her).[18]

Taking the above allegations as true for purposes of summary judgment, the Court cannot conclude as a matter of law that these incidents were not "sufficiently severe or pervasive to alter the terms and conditions of employment." Accordingly, the Court finds plaintiff has adduced sufficient evidence to create an issue for a jury to determine. See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 811-14 (11th Cir. 2010) (holding there was a genuine issue of material fact regarding hostile work environment based upon coworkers' frequent use of gender-specific derogatory comments and incident where a coworker displayed a pornographic image of a woman on his computer); Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004) (finding evidence sufficient to create a genuine issue of material fact regarding severe or pervasive harassment where supervisor proposition plaintiff for sex, followed her into a restroom, repeatedly attempted to touch her breasts, placed his hands down her pants, and pulled off her

---

[18] Walmart also objects that plaintiff does not have personal knowledge of the incidents because there is no indication she witnessed or experienced the incidents herself. (Doc. #67, pp. 2-3.)  However, based on plaintiff's affidavit and her deposition testimony, it appears plaintiff learned of these incidents by the victims' reporting of the behavior to the AP department.  (Doc. #56-1, ¶ 12; Doc. #44-1, pp. 257-58.)  Accordingly, plaintiff apparently learned of the incidents via hearsay, which, as noted above, can be used to support a hostile work environment claim.

pants); see also Lewis v. Aaron's Sales & Lease Ownership, Inc., 2013 WL 5741780, *12 (M.D. Fla. Oct. 22, 2013) ("Taking the evidence in the light most favorable to Lewis and considering all four factors, a genuine dispute of material fact exists as to whether Frizzell's conduct was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment. . . . This conclusion is consistent with that of other courts, which have noted that the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is a quintessential question of fact." (marks and citations omitted)).

## ii. Remedial Action

Walmart next argues that plaintiff's hostile work environment claim fails because plaintiff "is unable to show Walmart knew or should have known about the harassment, yet took insufficient remedial action." (Doc. #43, p. 21.) Walmart notes that (1) each of plaintiff's complaints was promptly investigated and appropriate remedial action was taken, (2) Walmart installed a plexiglass window even when it could not substantiate plaintiff's complaints about the drivers, and (3) Walmart terminated the employment of the AP coworker who sexually harassed plaintiff. (Id. pp. 21-22.) In response, plaintiff argues Walmart can be held liable for the acts of its managers, and she has "plausibly

established that her supervisors . . . were responsible for a hostile work environment." (Doc. #55, p. 15.)

Having reviewed the record, the Court finds there is sufficient evidence to create a jury question as to whether Walmart took appropriate remedial action. The Court finds Walmart's termination of the AP coworker's employment and installation of the barrier are not dispositive of the issue. Regarding the former, plaintiff's evidence indicates the alleged sexual harassment continued even after the AP coworker was fired. See Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989) (in hostile environment analysis, noting whether harassment ended after remedial action was "[o]f special importance"); Samedi v. Miami-Dade Cty., 206 F. Supp. 2d 1213, 1221 (S.D. Fla. 2002) (listing "whether or not the measures ended the harassment" as a factor to be considered in accessing the employer's remedial action). Regarding the barrier, it appears it was installed in 2018, roughly ten years after plaintiff's complaints began. See Samedi, 206 F. Supp. 2d at 1221 (listing the amount of time elapsed between the notice of harassment and the remedial action as another factor to consider).[19]

Viewing the evidence in the light most favorable to plaintiff,

_____

[19] The record also indicates plaintiff requested a barrier over a year before it was installed, and perhaps even before that. (Doc. #46-1, pp. 32-33.)

the alleged sexual harassment began shortly after plaintiff transferred into the AP division in August 2009 and continued until her suspension in March 2018. During that period, plaintiff made numerous complaints to her supervisors (both written and verbally), but the alleged harassment continued. Additionally, in response to the complaints, plaintiff's supervisor allegedly questioned whether plaintiff had flirted with one of the harassers, mocked her safety concerns, labeled plaintiff a "troublemaker," and called her complaints "annoying." The Court finds this evidence sufficient to create a jury question as to whether Walmart took appropriate remedial action. Accordingly, summary judgment on the sexual harassment/hostile work environment claim (Count II) is inappropriate.

### C. Retaliation (Counts IV, V, VI)

Plaintiff alleges Walmart retaliated against her in violation of Title VII (Count IV), the FCRA (Count V), and the FMLA (Count VI). (Doc. #1, pp. 10-13.) Both Title VII and the FCRA make it unlawful for an employer to retaliate against an employee because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statutes. 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). Alternatively, "[t]o prove FMLA retaliation, an employee must show that his employer *intentionally* discriminated against him for exercising an FMLA right." Martin v. Brevard Cty. Pub. Sch., 543

F.3d 1261, 1267 (11th Cir. 2008) (citing 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)).  To establish a prima facie case of retaliation under the statutes, plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events.  See id.; Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008); Beatty United Parcel Serv., Inc., 2015 WL 7777520, *2 (M.D. Fla. Dec. 3, 2015).  The McDonnell Douglas burden-shifting framework discussed previously also applies to retaliation claims supported by circumstantial evidence.  Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001); Wolf v. MWH Constructors, Inc., 34 F. Supp. 3d 1213, 1227 (M.D. Fla. 2014).

Prior to addressing Walmart's summary judgment argument, the Court first must determine what adverse employment action(s) plaintiff is alleging in the Complaint as part of her retaliation claims.  Regarding the Title VII and FCRA claims, plaintiff alleges that in response to her complaints of discrimination, Walmart took the following intentional and retaliatory adverse employment actions:

- Made false statements about plaintiff's character to other employees and generally ostracized plaintiff at work;

- Belittled plaintiff in front of other employees;

- Took "unfounded and pretextual disciplinary actions" against plaintiff; and

- Terminated plaintiff's employment.

(Doc. #1, ¶¶ 63-64, 70-71.) The Court finds that the first two of these allegations are insufficient to qualify as adverse employment actions. See McCone, 582 Fed. App'x at 800 ("Generally, an adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Regarding the "unfounded and pretextual disciplinary actions," the Court will assume this refers to (1) the CBL discipline and (2) the suspension and removal from AP. The Court has already determined the CBL discipline does not qualify, which leaves the suspension/removal and the alleged "termination," which presumably refers to the constructive discharge allegation.

For the FMLA claim, plaintiff alleges Walmart retaliated against her for exercising her FMLA rights by intentionally:

- "Creating, tolerating and promoting a hostile work environment with the intention to make Plaintiff's work environment so unpleasant that a reasonable person would quit the job if subject to the conduct to which Plaintiff was subjected";

- Engaging in constructive discharge of plaintiff; and

- Terminating plaintiff's employment.

(Doc. #1, ¶¶ 77-78.)   Of these allegations, the latter two certainly qualify as adverse employment actions, and the Court will assume without deciding that the first allegation does as well, see Lewis v. U.S. Dep't of Labor, Admin. Review Bd., 368 Fed. App'x 20, 30 (11th Cir. 2010) ("Although we have not explicitly recognized a retaliation claim based on a hostile work environment, other circuits have held that subjecting an employee to a hostile work environment in retaliation for engaging in protected activity constitutes adverse employment action.").

Turning to the motion before the Court, Walmart argues all the retaliation claims fail because plaintiff cannot establish a causal relationship.  (Doc. #43, p. 22.)   Specifically, Walmart argues plaintiff cannot show a close temporal connection and, therefore, cannot establish a prima facie case of retaliation.[20]

---

[20] Walmart also argues that plaintiff's violation of company policy and subsequent misrepresentation constituted sufficient misconduct to eliminate any inference of causation.  (Doc. #43, p. 23); see Henderson v. FedEx Express, 442 Fed. App'x 502, 506 (11th Cir. 2011) ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action.").  However, as plaintiff disputes she violated the policy and then lied about it, the Court disagrees with Walmart's assertion.  See Baussiquot v. AKAL Sec., Inc., 2018 WL 2100362, *7 (S.D. Fla. May 7, 2018) ("While undisputed evidence of intervening misconduct can break the causal link between a plaintiff's protected activity and an adverse employment action, the intervening misconduct here is itself in dispute and does not serve to break the causal link." (citation omitted)); see also Hankins v. AirTran Airways, Inc., 237 Fed. App'x 513, 520-21 (11th Cir.

(Id. pp. 22-23.) In her Memorandum, plaintiff does not specifically respond to Walmart's temporal proximity argument. Rather, plaintiff asserts she has met her "burden of establishing the requisite causal linkage" because Walmart knew of her complaints at the time of her suspension.[21] (Doc. #55, pp. 18-19.)

"In order to establish the requisite 'causal link' required as part of a prima facie case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (citations omitted). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." Id. (citations omitted). The Eleventh Circuit has held that, "where a decision-maker becomes aware of protected conduct,

---

2007) (finding "undisputed" misconduct by employee severed causal connection).

[21] In making her retaliation arguments, plaintiff focuses solely on her suspension, which she characterizes as, "for all intents and purposes," a termination. (Doc. #55, pp. 17-19.) For example, in arguing against summary judgment, plaintiff states "[t]here is . . . no genuine dispute that Plaintiff's suspension without pay was an adverse employment action," and that "Plaintiff has established that Walmart knew of Plaintiff's complaints . . . at the time they terminated her on March 11, 2018," the date of the suspension/removal. (Id. pp. 18, 19.) Based upon the previously cited case law from the Eleventh Circuit, the Court finds plaintiff's argument related solely to the suspension constitutes an abandonment of the Complaint's other allegations of adverse employment actions, i.e., constructive discharge and hostile work environment.

a close temporal proximity between the decision-maker's acquisition of that knowledge and an adverse employment action will generally be enough to create a factual issue on the causation element." Singleton v. Pub. Health Tr. of Miami-Dade Cty., 725 Fed. App'x 736, 738 (11th Cir. 2018); see also Schoebel v. Am. Integrity Ins. Co. of Fla., 2015 WL 4231670, *2 (M.D. Fla. July 10, 2015) ("Generally, close temporal proximity between an employee's protected conduct and an adverse employment action is circumstantial evidence giving rise to an inference of causation. The inference of causation from close temporal proximity is ordinarily sufficient to avoid summary judgment." (citations omitted)).

To determine whether the adverse employment action had a close temporal proximity to plaintiff's protected conduct, the Court must first determine when the protected conduct took place. Regarding the Title VII and FCRA retaliation claims, it seems plaintiff first complained to Walmart about sexual harassment in 2009, submitted her first EEOC complaint in March 2017, and submitted an amended EEOC complaint in December 2017.[22] Further, plaintiff continued to submit harassment complaints to Walmart throughout her employment, with the final one occurring in January

---

[22] While plaintiff subsequently submitted a second amended EEOC complaint, it was after she had already resigned from Walmart and, therefore, could not have been a basis for retaliation.

2018, approximately two months before she was suspended and removed from the AP division. Clearly most of plaintiff's complaints do not have a temporal proximity to her suspension and, accordingly, could not be used to demonstrate causation. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (noting temporal proximity, without more, must be "very close," and "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough"). Determining whether the January 2018 complaint, which took place two months before the suspension, has a close temporal proximity is more difficult. See Jacomb v. BBVA Compass Bank, 791 Fed. App'x 120, 124 (11th Cir. 2019) ("[O]ur case law addressing causation events that are two months apart consists solely of unpublished opinions with mixed outcomes."); Williams v. Waste Mgmt., Inc., 411 Fed. App'x 226, 230 (11th Cir. 2011) (finding two-month gap "may be 'closer' in time, but it is not 'very close'"). However, as plaintiff has alleged the investigation which led to her suspension was initiated less than two weeks after Walmart closed its investigation into the January 2018 complaint (Doc. #56-1, ¶ 32), the Court finds there is a temporal proximity.

Turning to the FMLA retaliation claim, the record is less clear as to the timing of events. Walmart has offered evidence indicating plaintiff took FMLA leave in 2012, 2013, and 2014, with the last occurring between October and November 2014. (Doc. #46-

1, p. 10.)  However, plaintiff has stated she was injured at work
in 2014 and took intermittent leave occasionally "[o]ver the next
few years." (Doc. #56-1, ¶ 16.)  She also testified she took FMLA
leave several times during her employment, more intermittently
towards the end of her employment.  (Doc. #44-1, pp. 63-64, 101-
02.)  Viewing the evidence in plaintiff's favor, it would seem
plaintiff alleges she took FMLA leave closer in time to her
suspension than Walmart's records indicate, but it is unclear how
close in time.  Regardless, the Court finds plaintiff has offered
sufficient evidence to create a jury question on this issue.  While
temporal proximity is sufficient to infer causation, it is not the
only evidence a plaintiff can offer.  See Thomas, 506 F.3d at 1364
(noting that "*in the absence of other evidence tending to show
causation*," a retaliation claim fails if there is a substantial
delay between the protected activity and the adverse action
(emphasis added)).  Here, in addition to plaintiff's evidence
regarding when she took leave, she has also testified that her
supervisor would make references to her taking leave and call her
lazy.  (Doc. #44-1, pp. 291-92.)  The Court finds this evidence
sufficient to create a jury question as to causation.

While plaintiff has offered sufficient allegations and
evidence to establish a prima facie case of retaliation under each
statute, the Court nonetheless concludes her claims fail as a
matter of law.  As noted previously, once a plaintiff establishes

a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate, non-pretextual reason for its action.  The Court has already concluded (1) Walmart's reasons for suspending plaintiff and removing her from the AP division were legitimate, and (2) plaintiff has failed to meet her burden of demonstrating pretext.  Accordingly, even if plaintiff adduced sufficient evidence to create a jury question on the causation element, the Court finds Walmart is entitled to summary judgment on the retaliation claims in Counts IV, V, and VI.  See Embry v. Callahan Eye Found. Hosp., 147 Fed. App'x 819, 833 (11th Cir. 2005) ("Thus, assuming that Embry established a *prima facie* case of retaliation based on her suspension, Embry failed to show that a genuine issue of material fact existed as to pretext."); Elver, 2019 WL 144916, *6-11 (finding employee had offered sufficient evidence to create a jury question as to causation, but nonetheless granting summary judgment on retaliation claims because employee failed to show employer's proffered reason was pretextual).

**D. Negligent Supervision, Training and Retention (Count VII)**

The final claim in the Complaint is for negligent supervision, training and retention.  (Doc. #1, p. 13.)  "The terms 'negligent retention' and 'negligent supervision' have the same meaning and are used interchangeably by Florida courts." Alcantara v. Denny's Inc., 2006 WL 8439596, *5 n.8 (M.D. Fla. Jan. 19, 2006) (citing Malicki v. Doe, 814 So. 2d 347, 362 n.15 (Fla. 2002)).  Negligent

retention and negligent supervision occur when, during the course of employment, an employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment. Id. (citation omitted); Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1461 (M.D. Fla. 1998) (citations omitted).` Alternatively, negligent training occurs "when an employer was negligent in the implementation or operation of the training program." Harrison v. Red Bull Distribution Co., Inc., 2019 WL 1117022, *2 (M.D. Fla. Mar. 11, 2019) (citation omitted). A plaintiff asserting a negligent training claim "must allege that she was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff." Id. (citation omitted).

In asserting the negligent supervision, training, and retention claim, plaintiff alleges Walmart: (1) "knew or should have known of the sexual harassment, discriminatory acts and hostile work environment perpetrated by its employees upon Plaintiff"; (2) "breached their duty to Plaintiff by failing to adequately train and supervise the employees who engaged in the above-referenced harassment and discrimination"; and (3) "failed to implement, demonstrate, discuss, and impart the appropriate

policies, procedures, training and supervision to their employees[,] agents or representatives, regarding harassment and discrimination." (Doc. #1, ¶¶ 81-83.) During her deposition, plaintiff identified the employees who worked in the facility and the truck drivers as those whom Walmart failed to adequately train and supervise. (Doc. #44-1, pp. 299-300.)

In seeking summary judgment, Walmart argues plaintiff's claim fails to the extent it is premised upon sexual harassment. (Doc. #43, p. 25 n.5.) The Court agrees.[23] "A claim for negligent training, supervision and retention 'must be based on an injury resulting from a tort which is recognized under common law.'" Smith v. Am. Online, Inc., 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007) (quoting Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)). The allegations in the Complaint, as well as plaintiff's deposition testimony, clearly indicate these negligence claims are based upon Walmart's alleged failure to prevent and correct sexual harassment and discrimination. However, neither harassment nor discrimination are recognized claims under Florida common law. See Briseus v. JPMorgan Chase Bank, N.A., 2018 WL 3586140, *3 (S.D. Fla. July 26,

---

[23] Plaintiff fails to address this argument in her Memorandum, instead arguing (incorrectly) that "Plaintiff [sic] has offered no argument against the negligent retention or training claim." (Doc. #55, p. 22.)

2018) ("To the extent Plaintiff attempts to state a claim for discrimination under the common law, Florida does not recognize such claims as they are a creature of statute."); Smith, 499 F. Supp. 2d at 1267 ("Florida law does not recognize a common law claim of sexual harassment as an independent tort."); Castleberry v. Edward M. Chadbourne, Inc., 810 So. 2d 1028, 1030 (Fla. 1st DCA 2002) ("Florida does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment."). As plaintiff has failed to allege an injury resulting from a tort recognized under the common law, she cannot maintain an action for negligent supervision, training and retention. See Wheeler v. Blackbear Two, LLC, 2012 WL 3596128, *2-3 (M.D. Fla. Aug. 21, 2012) (dismissing negligent supervision and retention claims that "stem from the failure of Defendant to correct a situation in which Plaintiff alleges that supervisors and employees harassed and discriminated against him in violation of Title VII . . . and the Florida Civil Rights Act" because "[t]hese are not common law causes of action"); Latson v. Hartford, Inc., 2005 WL 3372861, *2-3 (M.D. Fla. Dec. 12, 2005) (dismissing negligent retention, training and supervision claim because it was "based on a common law claim of sexual harassment which is not recognized as an independent underlying tort under Florida law"). Accordingly, Count VII of the Complaint fails as a matter of law

and Walmart is entitled to summary judgment.[24]  See Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (granting summary judgment on negligent supervision, training, and retention claim because claim was based upon employment sexual discrimination, which was not a recognized common-law tort).

Accordingly, it is now

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. #43) is **GRANTED in part and DENIED in part**.  The motion is granted as to Counts I, III, IV, V, VI, and VII.  The Clerk shall withhold entry of judgment until the conclusion of the case.  The motion is denied as to Count II.

**DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of March, 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record

---

[24]  Given the Court's conclusion on this issue, it is unnecessary to address Walmart's alternative argument that it did not breach its duty to plaintiff. (Doc. #43, p. 25.)